KC **FILED**

NOV 0 8 2007

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

OSCAR FLORES ESPAÑA , *a minor,*

                      Plaintiff,

    v.

M. YVONNE EVANS, NATIONAL JUVENILE
COORDINATOR FOR U.S. IMMIGRATION, and THE
DEPARTMENT OF HOMELAND SECURITY,

                      Defendants.

07CV6329
JUDGE DER-YEGHIAYAN
MAGISTRATE JUDGE ASHMAN

## COMPLAINT FOR EMERGENCY MANDAMUS RELIEF

Plaintiff, Oscar Flores España ("Flores"), by and through his attorneys, complains against

Yvonne Evans ("Evans") in her official capacity and the Department of Homeland Security

("DHS") (collectively, "Defendants") as follows:

### NATURE OF THE CASE

1.    This action arises under 8 U.S.C. § 1101(a)(27)(J) of the Immigration and

Nationality Act (the "INA"), a provision providing special immigrant status to certain alien

minors who have been abused, neglected, or abandoned by their families. For an alien juvenile

in government custody to obtain this Special Immigrant Juvenile Status ("SIJS"), he must first

apply for and receive "specific consent" from the Department of Homeland Security or its

appointed agent to seek a dependency order in state juvenile court. Flores is not seeking that this

Court grant him an immigration benefit rather, an opportunity to apply. This action seeks

mandamus relief against Defendants requiring Evans and DHS to issue consent to enable Flores

to seek a dependency order from an Illinois juvenile court before he "ages out" and loses his

eligibility to apply for such relief on his eighteenth birthday.

**PARTIES**

2.    Flores is a seventeen-year-old native and citizen of Honduras. He is an unaccompanied immigrant minor in the custody of the Office of Refugee Resettlement ("ORR") at the International Children's Center in Chicago, Illinois.

3.    Defendant Evans is Chief of the Juvenile and Family Residential Management Unit, Bureau of U.S. Immigration and Customs Enforcement, Department of Homeland Security. On information and belief, Evans is charged with the constitutional and lawful implementation of the Immigration and Naturalization Act. She is sued in her official capacity.

4.    Defendant DHS is the Executive Department responsible for the administration of the INA and regulations and policies thereunder.

**JURISDICTION AND VENUE**

5.    Jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331 and 1346(a)(2) in that the matter in controversy arises under the Constitution and laws of the United States and the United States is a defendant.

6.    Jurisdiction is also proper under 28 U.S.C. § 1361 as this is an action to compel the defendants to perform their official duty.

7.    Venue is proper in this judicial district pursuant to 28 U.S.C. §§1391(b) and (e).

**STATEMENT OF FACTS**

8.    Flores is a 17 year-old boy from Honduras who was born on November 14, 1989 and will turn 18 years of age on November 14, 2007. *See* Exhibit 1 to the November 2, 207 Emergency Request for Consent ("Emergency Request") attached hereto as Exhibit A.

9.    Flores was abandoned by his mother, Bertha España, when he was three months old. He was orphaned at the age of eight when his father was brutally murdered. Flores has no siblings. *See* Emergency Request and Exhibits 2 and 3 thereto. Flores' only legal guardians, his

parents, have abandoned him.

10.    When Flores was orphaned, he was sent by his destitute paternal grandmother, Alejandrina Ardon, to live with various relatives because she had insufficient funds to care for him. Ms. Ardon neglected him by placing him in an injurious environment and failing to provide Flores with the care necessary to protect his well being. *See* Emergency Request, Exhibit 5.

11.    Flores was severely verbally, emotionally and physically abused by various family members in each of the homes in which he was sent to live. *See* Exhibit 2 to Emergency Request. Flores eventually went back to live with his grandmother, but was continually abused by other family members there as well. *See* Exhibit 2 to Emergency Request.

12.    Flores eventually left his grandmother's house to avoid further abuse and mistreatment and lived on the streets of Honduras for a period of time. *See* Exhibit 2 to Emergency Request.

13.    Flores then left Honduras and made his way to the United States via Guatemala and Mexico. *See* Exhibit 2 to Emergency Request.

14.    During the summer of 2006, Flores was stopped by immigration while he was on a train to Houston, Texas. Flores was sent to a detention center in Nixon, Texas because he did not have immigration documents. *See* Exhibit 2 to Emergency Request.

15.    Flores was then placed in removal proceedings.

16.    Flores was horribly mistreated and abused at the detention center in Nixon. Because of this mistreatment, he requested that the director of the facility move him to another facility, but his request was refused. *See* Exhibit 2 to Emergency Request.

17.    In a state of desperation due to the abuse he experienced at the Nixon facility,

Flores volunteered to be deported rather than fight his deportation. He could not stand further mistreatment at the Nixon detention facility. In October of 2006, Flores was deported to Honduras. *See* Exhibit 2 to Emergency Request.

18.    Flores was afraid to remain in Honduras. *See* Exhibit 2 to Emergency Request.

19.    He immediately made his way back to the United States for a second time in November of 2006. In August of 2007, Flores was arrested by immigration officials and detained. *See* Exhibit 2 to Emergency Request.

20.    DHS issued an administrative order reinstating the prior order of removal on August 16, 2007. On September 10, 2007, representatives for Flores requested that DHS conduct a reasonable fear interview. On October 2, 2007, DHS conducted an orientation for Flores's reasonable fear interview and scheduled the interview for October 9, 2007.

21.    On October 9, 2007, DHS conducted a reasonable fear interview. On October 23, 2007, DHS issued a decision finding that Flores established a reasonable fear of persecution if he returned to Honduras.

22.    Flores is an orphan who has been abandoned, neglected and abused, and therefore, is eligible for special immigrant juvenile status.

23.    On receiving the October 23, 2007 notice from DHS, Flores obtained from Honduras, his birth certificate, his father's death certificate and an affidavit from his paternal grandmother to support his emergency request for specific consent from DHS. An emergency request for consent was sent via overnight mail on November 2, 2007, within 10 days of receiving the DHS notice[1]. *See* Exhibit A.

---

[1] Flores obtained a copy of his father's death certificate on October 31, 2007 (See Exhibit 2 to Exhibit A) and his grandmother's affidavit on November 2, 2007 (See Exhibit 3 to Exhibit A.

24.    Flores' request made clear on its face that it was submitted on an emergency basis and requested a response from DHS on or before November 7, 2007—seven days from Flores's 18th birthday on November 14, 2007.

25.    The Emergency Request submitted all information necessary to satisfy the requirements necessary for the DHS to issue specific consent. The Request confirmed Flores' age, his abused and neglected status and his current detention by the ORR as an unaccompanied minor immigrant.

26.    The DHS responded on November 6, 2007, via fax and on November 7, 2007 via email stating that the department was "processing the request for consent as quickly as possible, and [has] initiated a request for all available information regarding your client." A copy of the fax and email transmissions and DHS' response is attached hereto as Exhibit B.

27.    The DHS' response is the functional equivalent of a denial of the specific consent required for Flores to seek a dependency order from an Illinois juvenile court given the proximity of Flores's eighteenth birthday and the fact that any Illinois juvenile court proceeding must be commenced on or before November 9, 2007, to comply with notice requirements.

## APPLICABLE LAW

28.    Section 101(a)(27)(J) of the Immigration and Nationality Act (the "INA") sets forth the necessary requirements for a person to be considered a Special Immigrant Juvenile. To achieve SIJ status, an immigrant must be "declared dependent on a juvenile court located in the United States..." and "for whom it has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence." 8 U.S.C. §§ 101(a)(27)(J)(i)-(ii).

29.    The INA also states that "no juvenile court has jurisdiction to determine the custody status or placement of an alien in the actual or constructive custody of the Attorney

General unless the Attorney General specifically consents to such jurisdiction." 8 U.S.C. § 101(a)(27)(J)(iii)(I).

30.     DHS has interpreted this section of the INA as requiring juveniles in federal custody to seek consent prior to seeking a dependency order from a state juvenile court. The DHS empowered U.S. Immigration and Customs Enforcement ("ICE") to give consent when requested. In a May 27, 2004 internal memorandum to Regional and District Directors, DHS stated that:

> a juvenile alien seeking classification as a special immigrant juvenile based on a juvenile court's dependency order must have, in all cases, the "express consent" of the Secretary of the DHS. In those cases involving a juvenile in the actual or constructive custody of the federal government, the juvenile must first obtain "specific consent" to the juvenile court's jurisdiction from the Secretary, through ICE, before proceedings on issuing a dependency order for the juvenile may begin.

31.     Without the consent of DHS, Flores cannot apply for a dependency order, and therefore cannot file an application for SIJ status.

## COUNT I: ADMINISTRATIVE PROCEDURES ACT

32.     Flores realleges paragraphs 1 through 30 as if fully set forth herein.

33.     Flores is entitled to specific consent because the facts included in his Emergency Request establish that issuing consent is in his best interests and the facts show that Flores appears to be eligible for SIJ status.

34.     Defendants' failure to process Flores's request within the time requested serves as a *de facto* denial of consent since the legal consequences are that Flores will be barred from seeking a dependency order from an Illinois juvenile court before he "ages out" on November 14, 2007.

35.     Defendants' failure to issue specific consent to within the time requested Flores constitutes final agency action that gives this Court jurisdiction over this matter.

36.     Defendants' failure to issue specific consent within the time requested is arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law. 5 U.S.C. § 706(a)(A).

37.     Pursuant to the Administrative Procedures Act (the "APA"), 5 U.S.C. §§ 701 *et seq.*, Defendants' failure to timely respond to Flores's request for specific consent within the time requested constitutes a reversible error, as an arbitrary and capricious exercise of agency authority, as that decision is inconsistent with the purposes of the SIJ provision and its governing regulations and policies.

WHEREFORE, Flores respectfully requests this Court enter a judgment as follows:

(A)     Directing Defendants' to enter a final order granting specific consent to state juvenile court jurisdiction over Flores effective November 8, 2007;

(B) Any other and further relief that the Court deems equitable and just.

## COUNT II: MANDAMUS RELIEF

38.     Flores realleges paragraphs 1 through 36 as if fully set forth herein.

39.     Under 28 U.S.C. § 1361, the district court may "compel an officer or Employee of the United States or any agency thereof to perform a duty owed to plaintiff."

40.     The INA provides special immigrant status to certain alien minors who have been abused, neglected, or abandoned by their families once DHS gives consent to the juvenile court's jurisdiction.

41.     On July 9, 1999, the then-INS issued a memorandum stating the following:

> The district director, in consultation with the district counsel, *should* consent to the juvenile court's jurisdiction if: 1) it appears that the juvenile would be eligible for SIJ status if a dependency order is issued; and 2) in the judgment of the district director, the dependency proceeding would be in the best interest of the juvenile. A copy of the 1999 INS Memo is attached hereto as Exhibit 4 to Exhibit A.

*See also M.B. v. Quarantillo*, 301 F.3d 109, 113 (3rd Cir. 2002).

42.    Flores did not seek specific consent earlier because evidence to support such request was not obtained until October 31, 2007 (father's death certificate) and November 2, 2007 (grandmother's affidavit).

43.    Flores is entitled to specific consent from the DHS because his Emergency Request demonstrates that issuing the request is in his best interests and the facts establish that he is abandoned and that he that he is eligible for SIJ status.

44.    Defendants are the only ones authorized to issue the specific consent necessary for Flores to seek a dependency order from an Illinois juvenile court.

45.    Defendants failed to issue an order granting specific consent to the juvenile court's jurisdiction over Flores within the time needed to ensure his ability to begin the SIJ process notwithstanding that Flores established that he would be eligible for SIJ status if the dependency order was issued and that it would be in Flores's best interest to be granted SIJ status. *See* Exhibit A.

46.    Prior to initiating this action, Flores made a formal demand that the defendants fulfill their statutory duty as set forth in this Complaint, but the defendants refused. Therefore, Flores has no remedy except for this action seeking to compel the defendants to fulfill their clear legal duty and issue the specific consent necessary to advance the state court proceedings before Flores's eighteenth birthday. *C.f. A.A.-M v. Gonzales*, 2005 WL 3307531, *4 (W.D. Wash. Dec. 6, 2005) (holding that remand "for reconsideration is clearly an insufficient remedy" where plaintiff would be unable to complete the process before his eighteenth birthday.").

47.    Flores filed his request for consent immediately upon obtaining evidence to support eligibility for SIJ. DHS will not be prejudiced if the Court compels DHS to grant specific consent as the Court is not granting an immigration benefit. Once consent is granted and Flores

obtains a dependency order from Illinois Juvenile Court, DHS will have an opportunity to determine if Flores is eligible to obtain special immigrant juvenile status.

48.    Plaintiff will suffer irreparable injury if the defendants are not compelled to perform their clear legal duty.  *See Zheng v. Pogash*, 416 F. Supp. 2d 550, 560 (S.D. Tex. 2006) (not allowing application to secure consideration in a state court constitutes "irreparable injury.").

49.    Plaintiff is not requesting that this Court grant him an immigration benefit. Plaintiff only requests permission to pursue such remedy.

WHEREFORE, Flores respectfully requests this Court enter a judgment as follows:

(A)    Directing Defendants to enter a final order granting specific consent to permit Flores to seek a dependency order from an Illinois juvenile court effective November 8, 2007;

(B)    Any other and further relief that the Court deems equitable and just.

Dated: November 8, 2007          Respectfully submitted,

By: _____
Rosa M. Tumialán, ARDC # 6226267
rtumialan@dykema.com
Katharine N. Dunn, ARDC# 6282789,
kdunn@dykema.com
Dykema Gossett PLLC
10 S. Wacker Drive, Suite 2300
Chicago, IL 60606
(312) 876-1700
*Attorneys for Plaintiff Oscar Flores España*





NATIONAL
IMMIGRANT JUSTICE
CENTER

a HEARTLAND ALLIANCE partner

*VIA PRIORITY OVERNIGHT MAIL*

November 2, 2007

Ms. Mary Yvonne Evans
Office of Juvenile Affairs
U.S. Department of Homeland Security
801 I Street NW, Ste. 800
Washington, DC 20536

RE:    **EMERGENCY EXPEDITED Request for Specific Consent to Juvenile Court
Jurisdiction**
Oscar Adelso Flores España, A94-770-920

## EMERGECY REQUEST FOR CONSENT

## APPLICANT TO TURN EIGHTEEN ON NOVEMBER 14, 2007

Dear Ms. Evans:

The National Immigrant Justice Center (NIJC) represents Oscar Flores España, an unaccompanied immigrant minor who is in custody of the Office of Refugee Resettlement at the International Children's Center in Chicago, IL. Mr. Flores España will turn eighteen on November 14, 2007. We ask that you respond to this request on or before Wednesday, November 7, 2007. Pursuant to the Immigration and Nationality Act (INA) § 101(a)(27)(J)(I)(iii)(I) and Thomas E. Cook's Memorandum dated July 9, 1999, I respectfully request your consent in giving the Juvenile Court jurisdiction to make a determination of custody for Mr. Flores España. Once the Juvenile Court makes such a determination, Mr. Flores España will apply for Special Immigrant Juvenile Status (SIJS).

### Statement of Facts

Oscar Flores España ("Oscar") is a 17 year-old boy from Honduras. He was born November 14, 1989. (*See Exhibit 1*, Copy of Birth Certificate of Oscar Flores España). His mother left him when he was approximately three months old. He was orphaned at the age of eight when his father was murdered. (*See Exhibit 2*, Death Certificate of Oscar Adelso Flores) Oscar has no siblings.

When Oscar became an orphan he lived with various relatives. He was severely mistreated by his relatives. In each new home he was sent to live in, he was verbally, emotionally and/or physically abused. (*See Exhibit 3*, Affidavit of Oscar Adelso Flores España)

Heartland Alliance for Human Needs & Human Rights | National Immigrant Justice Center
208 S. LaSalle St. Ste 1818 Chicago, IL 60604 | ph: 312-660-1370 | fax: 312-660-1505 | web: www.immigrantjustice.org

**EXHIBIT A**

## Applicable Law

A "Special Immigrant Juvenile" is an immigrant who is in the Unites States and who has been declared dependent on a juvenile court located in the United States or whom such court has legally committed to, or placed in the custody of, an agency or department of a State, and who has been deemed by that court eligible for long-term foster care due to abuse, neglect or abandonment. 8 U.S.C. § 1101(a)(27)(J).

The regulation provides a three-step process for a child in federal custody to obtain SIJ status. First, the child must obtain specific consent from the Attorney General to seek a dependency order from a state juvenile court. Second, the child must obtain a dependency order from the juvenile court on the basis of abuse, neglect or abandonment of the juvenile. Finally, the child must obtain the express consent of the Department of Homeland Security to the juvenile court's dependency order. *See* 8 U.S.C. § 1101(a)(27)(J).

On July 9, 1999, the then-INS issued a memorandum (INS memo) setting forth the following considerations for determining when a specific consent to state dependency should be granted:

> The district director, in consultation with the district counsel, *should* consent to the juvenile court's jurisdiction if: 1) it appears that the juvenile would be eligible for SIJ status if a dependency order is issued; and 2) in the judgment of the district director, the dependency proceeding would be in the best interest of the juvenile. (*See Exhibit 4*, INS Memo)

Regulations further provide that an alien is eligible for SIJ status if he:

(1)     is under twenty-one years of age;
(2)     is unmarried;
(3)     has been declared dependent upon a juvenile court;
(4)     has been deemed eligible by the juvenile court for long-term foster care;
(5)     continues to be dependent upon the juvenile court and eligible for long-term foster care; and
(6)     has been the subject of judicial or administrative proceedings where it has been determined that it would not be in the alien's best interest to be returned to the country of nationality or last habitual residence of the beneficiary or his or her parent or parents. *See* 8 C.F.R. § 204.11.

Under Illinois law, a "neglected" child is a minor under 18 who is not receiving the proper or necessary support, education as required by law, or medical care, or other necessary care for his well being including adequate food, clothing and shelter, or is abandoned by his parents or legal guardian. 705 ILCS 405/2-3(1)(a). A "neglected" child is also a minor under 18 who is placed in an environment that is injurious to his welfare. 705 ILCS 405/2-3(1)(b). The term "abandonment" means the failure of a parent to maintain a reasonable degree of interest, concern, or responsibility for the welfare of his or her minor child. 705 ILCS 405/2-4(b)(1). Once the court determines the child is a dependant on the state court, it then must determine whether the child is a special immigrant minor pursuant to 705 ILCS 405/2-4(a), (b). If an immigrant minor is present in the United States, has been made a ward of the court, and if the juvenile court determines it would not be in the best interests of the child to be returned to his country of origin then the child is deemed a special immigrant minor.

## Application of Law

Oscar is eligible for special immigrant juvenile status. He is under 21 years of age. (*See Exhibit 1*, Birth Certificate of Oscar Adelso Flores España). He is unmarried, and under Illinois Law, he will be declared dependent upon a juvenile court and eligible for long-term foster care.

Oscar meets the Illinois statutory definition of an abandoned and neglected minor. He was abandoned by his mother when she no longer maintained a reasonable degree of interest, concern, or responsibility for his welfare. In fact, his mother disappeared completely from his life shortly after his birth. Oscar's father died, leaving Oscar an orphan. Thus his parents are no longer available to provide care and shelter to Oscar. Oscar has no other legal guardians.

Oscar has been abused and neglected by many other members of his family with whom he briefly lived. Those who did not physically abuse him, neglected Oscar, by placing him in an injurious environment and by failing to provide Oscar with the care necessary to protect his well being. (*See Exhibit 5*, Affidavit of Alejandrina Ardon, Grandmother of Oscar Adelso Flores España)

The dependency proceeding would be in Oscar's best interest. There is no parent or legal guardian in Honduras to care for Oscar. It is not in his best interest to be returned to Honduras where no legal guardian or parent is available to care for him.

## Conclusion

For the reasons set forth above, Oscar meets all of the eligibility requirements for SIJS and qualifies as an abandoned child under Illinois state law. Accordingly, Oscar will prevail in an SIJS petition after a dependency order is issued. It is clear that a dependency proceeding is in Oscar's best interest.

**Oscar's eighteenth birthday is November 14, 2007. For this reason, we are requesting that your office respond on or before *NOVEMBER 7, 2007*. A failure to respond by this time will irreparably harm Oscar's case for relief under federal immigration law.**

I appreciate your expedited consideration in this important matter. If you have any questions or require additional information, please don't hesitate to contact me at (312) 660-1335 or Bing Luo at (312) 660-1335.

Respectfully,

Sarah J. Diaz, Esq.
National Immigrant Justice Center

Bing Luo, Esq.
National Immigrant Justice Center

Enclosures

cc:     The Honorable Jennie L. Giambastiani, Immigration Judge
        Karen Lundgren, Office of the Chief Counsel

NOV-01-2007  05:10        ICC_HHCS                                              P.07



REPUBLICA DE HONDURAS
REGISTRO NACIONAL DE LAS PERSONAS
REGISTRO CIVIL MUNICIPAL

Nº 9861362

# CERTIFICACION DE ACTA DE NACIMIENTO

El infrascrito Registrador Civil Municipal CERTIFICA que en el Archivo de nacimientos que se tiene en esta oficina; se encuentra

el acta de nacimiento número: `0 5 1 1 - 1 9 9 0 - 0 0 2 9 8`  ubicada en el folio __186__ del tomo __00069__
Número de identidad

del Año __1990__ y que pertenece a:

a) ___FLORES___                          b) ___ESPAÑA___
Primer Apellido                              Segundo Apellido

c) ___OSCAR ADELSO___                      SEXO  F ☐   M ☒
Nombre

y cuya información es la siguiente:

1.) Lugar, fecha y orden de nacimiento

a) ___VILLANUEVA___   b) ___CORTÉS___              c) ___HONDURAS___
Municipio            Departamento                      País

d) ___CATORCE___  e) ___NOVIEMBRE___  f) ___1989___  g) ___UNO___
Día                  Mes                Año              Orden en parto múltiple

2.) Apellidos, nombre y nacionalidad del padre:

a) ___FLOES___                           b) ___- - - - - - - -___
Primer Apellido                              Segundo Apellido

c) ___OSCAR ADELSO___                    d) ___HONDUREÑA___
Nombre                                       Nacionalidad

3.) Apellidos, nombre y nacionalidad de la madre:

a) ___ESPAÑA___                          b) ___VELLOSA___
Primer Apellido                              Segundo Apellido

c) ___BERTHA LIDIA___                    d) ___HONDUREÑA___
Nombre                                       Nacionalidad

4.) Notas marginales autorizadas:

___NINGUNA___

Extendida en ___VILLANUEVA___                        ___CORTÉS___
Municipio                                            Departamento

a los: ___DIECISIETE___        Año de días de       ___OCTUBRE___

del DOS MIL ___SIETE___

Firma y Sello del Registrador Civil Municipal

3GIqynUGPyIOJiH7f$7MBzZcZ+g$m9lPxbR6SmB9fHxuXnjHpqqk4wD9w+0ZHaeXgau

## Translation of a "Birth Certificate"

Chicago, IL

(print or type)

(Form JJG-4)

1. NAME: Oscar _____ Adelso _____ Flores España _____

        (First)         (Middle)         (Last)

2. Birth: -Place: Villanueva _____ Cortes _____ Honduras _____

        (City/Town)     (State/Province)     (Country)

      -Date: November _____ 14 _____ 1989 _____

        (Month)         (Day)         (Year)

3. Father's Name: Oscar _____ Adelso _____ Floes _____

        (First)         (Middle)         (Last)

4. Mother's Name: Bertha _____ Lidia _____ España Vellosa _____

        (First)         (Middle)         (Last)

5. Certificate Issued:

    Date: October _____ 17 _____ 2007 _____

        (Month)         (Day)         (Year)

    Place: Villanueva _____ Cortes _____ Honduras _____

        (City/Town)     (State/Province)     (Country)

    Magistrate: _____

        (Full name)

6. Certificate Found: Archive or Register: 186 _____

        Page 00069 _____ No. 9861362 _____

7. Notations of Importance:

## Certificate of Translation

I, (*) Thomas Herman , hereby certify that the above is an accurate translation of the original "birth certificate" in (**) Spanish ; and that I am competent in both English and (**) Spanish to render such translation.

_____ 11/02/2007

(Signature of Translator)         (Date)

(*) Printed or typed, name of the translator in full
(**) Language of the original certificate- Spanish, French, Chinese, German, etc...
****Note: A copy of the original document should be attached to this summary translation form and certification.

FROM : HONDUTEL LA CEIBA    PHONE NO. : 00 504 4    49    OCT. 31 2007 11:21AM P1    P.08



REPUBLICA DE HONDURAS
TRIBUNAL NACIONAL DE ELECCIONES
REGISTRO NACIONAL DE LAS PERSONAS
DIVISION DEL REGISTRO CIVIL

REGISTRO NACIONAL DE LAS PERSONAS
05    11
REGISTRO CIVIL MUNICIPAL
VILLA NUEVA, CORTES
HONDURAS C.A.    COLOQUE AQUI
TIMBRES

# CERTIFICACION DE ACTA DE DEFUNCION

El infrascrito Registrador Civil Municipal, CERTIFICA que en el Libro de Defunciones del año 2.002
que lleva esta oficina, se encuentra el Acta número 0006 116 Folio Nº 88 Tomo Nº 3.C
y cuya información sobresaliente es la siguiente:

Inscrito:

a.-) Flores    b.-)

c.-) Frank Alejandro    ch.-) Hondureño

d.-) Sexo    F ___    M ✓    e.-) Edad 41 Años    f.-) 0 4 0 5 1 9 6 1 0 0 0 0 9 3

Datos de Defunción:

a.-)    b.-) El Marañón

ch.-)    d.-)

e.-) Fecha de defunción 1 8 1 0 2 0 0 2    f.-) Hora 3:00 p.m.

g.-) Permiso de entierro 1 9 1 0 2 0 0 2    h.-) General

i.-) Lugar: El Marañón, Villanueva, Cortés    j.-) Testó    Si ___ No ✓ Ignorado ___

Notas Marginales Autorizadas:    Ninguna

Extendida en    Villanueva    Cortés

a los Diez nueve días del mes de Septiembre dos mil Seis

REGISTRO NACIONAL DE LAS PERSONAS
05    11
REGISTRO CIVIL MUNICIPAL
VILLA NUEVA, CORTES
Firma y Sello del Registrador Civil Municipal

NOTA: Como los números de identidad no aparecen en las Actas anteriores a 1984, deben ser tomados de la certi-
ficación de Nacimiento numerada o de la tarjeta de identidad del fallecido si el informante lo proporciona.

FORMA 02-02-06

## Translation of a Death Certificate

1. Name: _Frank_ _Alejandro_ _Flores_
   (First)      (Middle)      (Last)

2. Death: Place: _El Marañon/Villanueva_ _Cortes_ _Honduras_
   (City/Town)      (State/Province)      (Country)

   Date: _October_ _10_ _2002_
   (Month)      (Day)      (Year)

3. Spouse of the deceased at the time of his/her death:

   _n/a_
   (First)      (Middle)      (Last)

4. Official who signed the Certificate of Death, Doctor or Clerk:

   _[illegible]_
   (First)      (Middle)      (Last)

5. Certificate Issued:
   Date: _September_ _6_ _2006_
   (Month)      (Day)      (Year)

   Place: _Villanueva_ _Cortes_ _Honduras_
   (City/Town)      (State/Province)      (Country)

   Magistrate: _n/a_
   (Full name)

6. Certificate found: Archive or Register: _88_
   Page _____  No. _00146_

7. Notations of importance:

### Certificate of Translation

I, _Thomas Herma_ , hereby certify that the above is an accurate translation of the original death certificate in _Spanish_ ; and that I am competent in both English and _Spanish_ to render such translation.

_[signature]_ _11/02/2007_
(Signature of Translator)      (Date)

Agency:

### Affidavit of Oscar Flores España
### in Support of Application for Special Immigrant Juvenile Status

I, Oscar Flores España, having first been duly sworn on oath, depose and state as follows:

1. My name is Oscar Flores España. I was born in El Paraíso, Honduras, but I grew up in La Ceiba and San Pedro Sula, Honduras. I was born on November 14, 1989. I have no brothers or sisters.

2. I never knew my mother, Bertha España, who I was told by my father and paternal-grandmother, left me when I was only a few months old. I do not know her whereabouts or if she is dead or alive. My father's name is Oscar Flores. After my mother left us, I lived with my dad. He treated me well.

3. When I was approximately seven years old, my father and I moved to San Pedro Sula, Honduras, to be closer to his parents and family.

4. In September of 1998 my father was murdered. My family told me that he was killed by the Mara 18.

5. When my father died, I became an orphan. I felt like I had nowhere to go. My grandmother could not take care of me. She was too poor and did not have a house of her own and was living with her brother at that time. My grandmother gave me away to her sister, my great-aunt, Reina Ardon, who also lived in San Pedro Sula.

6. My great aunt, Reina Ardón, and her two children treated me badly. I am not sure of the age of Reina's children, but they were much older than me. I was not allowed to go to school. I cleaned the house and ran errands for them. I was beaten almost daily. They kicked me, punched me, and used a belt.

7. After one year of being abused, I begged my grandmother to take me away from Reina's house. She agreed and this time she sent me to live with her son, my uncle Elias in La Ceiba, Honduras.

8. Comparing to Reina, my uncle was nice. He never beat me and I was allowed to go to school. But his wife, Lydia, disliked me and would beat me often. She would scream at me and hit me whenever my uncle was at work. She used whatever she had to hit me including her hands, pots and pans, a broom or a belt. I received many beatings that left bruises.

9. I complained to my uncle Elias about being beaten by his wife Lydia, when he mentioned something to Lydia, she would hit me anyway.

10. I began to live with my grandmother. My uncle, Noel also lived there. Noel often drunk he often beat and kicked me. I still remember to this day being kicked by Noel while he wore big, heavy leather boots. I remember the pain, and I remember having

Affidavit of Oscar Adelso Flores España

bruises all over my body. Noel would often kick me hard in the back of my knees to make me fall down. He would then beat and kick me.

11. My grandmother saw this happen, but did not protect me.

12. At this point in my life, I felt like no one loved me. Everything that had happened to me since my father's death was horrible. I did not want to live. I tried to kill myself. I was ten years old when I climbed up a tree with a rope and tied it to the tree. I had planned to hang myself from a high branch and attach the rope around my neck.

13. A man who was collecting firewood saw me in the tree. He yelled and asked me what I was doing. He climbed up the tree and took the rope. He never asked me why I was going to kill myself; he just took me back to my grandmother's house and told them what he had seen.

14. After the man left, Noel took the rope and whipped me. My grandmother and some family members were all there but no one tried to stop Noel.

15. I asked Noel if he would leave me alone if I could find a job. He said he would give me 200 Lempiras (about $10) if I left. I was determined to leave, so I took the money from Noel, and left. No one came after me.

16. I lived in the street in Honduras for a while. I left Honduras, made my way to the United States traveling through Guatemala and Mexico. It took me more than one year to reach the United States.

17. In the summer of 2006 I was on my way to Houston and was stopped on a train by immigration. Because I did not immigration documents I was sent to a detention center in Nixon, Texas.

18. The facility in Nixon was an awful place. We were mistreated. The staff would yell at us, call us bad names and often hit us. The staff often started arguments with the us and provoked us so we would act up so that they could then shove us around or hit us. Several times I was thrown hard against a wall. Once I had a hand mark on my chest, because I was shoved so hard by the staff. I was pummeled in the chest and on the back. One friend of mine got a black eye from being punched in the face. I showed the director of the facility bruises from the abuse by the staff, and he would tell me that I did it to myself.

19. I asked the director of the facility to move me to another place, but the director refused.

20. One day in court, I felt desperate. The judge asked who wanted to be deported. I stood up. I couldn't stand it any more at Nixon. Otherwise, I would have waited and fought my case.

Affidavit of Oscar Adelso Flores España

21. I was deported to Honduras in October 2006.

22. I flew in to Honduras, and immediately began my second journey to the United States. I am afraid to be in Honduras.

23. I arrived in the United States the second time in November 2006. In August 2007, I was caught by immigration.

24. I cannot go back to Honduras. I have been mistreated there most of my life, and have no one that will protect me.

3

# VERIFICATION

I, Oscar Flores Espana, hereby swear under oath that the above statements are true and correct to the best of my knowledge.

_Oscar Adelso Flores España_
Oscar Flores Espana

O.F.
11/2/07
Date

HQADN 70/6.1.7-P

JUL 9 1999

MEMORANDUM FOR     REGIONAL DIRECTORS
                              DISTRICT DIRECTORS
                              OFFICERS IN CHARGE
                              SERVICE CENTER DIRECTORS
                              REGIONAL COUNSEL
                              DISTRICT COUNSEL

FROM:      Thomas E. Cook /s/
              Acting Assistant Commissioner
              Adjudications Division

SUBJECT:    Special Immigrant Juveniles - Memorandum #2: Clarification of
              Interim Field Guidance

On August 7, 1998, the Office of Adjudications issued a memorandum providing interim field guidance on section 113 of Public Law 105-119, amending the special immigrant juvenile (SIJ) provisions of section 101(a)(27)(J) of the Immigration and Nationality Act (INA). The purpose of this memorandum is to provide clarification of the interim field guidance relating to the Attorney General's consent and on the documentation required to support a special immigrant juvenile petition. The clarification that is provided in this memorandum supercedes the previous guidance on these subjects.

**Attorney General's Consent**

New section 101(a)(27)(J) contains two provisions that require the Attorney General to consent in SIJ cases. One provision requires the Attorney General to consent to a juvenile court's jurisdiction over dependency proceedings for a child in the custody of the Immigration and Naturalization Service (INS). The other provision requires the Attorney General to consent to a juvenile court dependency order serving as a precondition to the grant of SIJ status. As an interim measure, district directors, in consultation with their district counsel, should continue to act as the consenting official in these cases.

*Juveniles in INS Custody*

In the case of juveniles in INS custody, the Attorney General's consent to the juvenile court's jurisdiction must be obtained before proceedings on issuing a dependency order for the juvenile are begun. Therefore, if a juvenile court issues a dependency order for a juvenile in INS custody without first obtaining the Attorney General's consent to the jurisdiction, the order is not valid.

Requests for the Attorney General to consent to a juveniles court's jurisdiction over a juvenile in INS custody must be made in writing and directed to the district director with jurisdiction over

the juvenile's place of residence. The district director, in consultation with the district counsel, should consent to the juvenile court's jurisdiction if: 1) it appears that the juvenile would be eligible for SIJ status if a dependency order is issued; and 2) in the judgement of the district director, the dependency proceeding would be in the best interest o f the juvenile.

*Juveniles not in INS Custody*

In the case of juveniles not in INS custody, the Attorney General's consent to the dependency order must be obtained as a precondition to the grant of SIJ status. Juvenile courts do not need the Attorney General's consent to take jurisdiction to issue dependency orders for these juveniles. Therefore, in the case of juveniles not in INS custody, INS officials should not become involved in juvenile court proceedings in order to consent to dependency orders. Rather, the Attorney General's consent to the dependency order should be reflected in a grant or denial of the petition for SIJ status.

A dependency order issued for a juvenile not in INS custody may serve as a precondition to a grant of SIJ status only if two elements are established. First, a juvenile court must have deemed the juvenile eligible for long-term foster care due to abuse neglect and abandonment. Second, it must have been determined in administrative or judicial proceedings that it would not be in the juvenile's best interest to be returned to the juvenile's or parent's previous country of nationality or country of last habitual residence. If both elements are established, consent to the order serving as a precondition must be granted. If either element is not established, consent must be refused.

If a dependency order or other supporting documentation submitted with an SIJ petition establish the above-mentioned elements for consent, the district director must consent to the order. After the consent is granted, the office should proceed to determine if the juvenile is otherwise eligible for SIJ status. While the record of the proceeding must reflect that the consent elements were established and that consent was granted, a separate notice of consent need not be issued to the petitioner. If SIJ status is ultimately granted, the Attorney General's consent may be implied from the grant. If SIJ status is ultimately denied for other eligibility reasons, the notice of denial should note that consent was granted in addition to the grounds for denial.

If a dependency order or other supporting documentation submitted with an SIJ petition do not establish the consent elements, the district director must refuse to consent to the order and eligibility for SIJ status need not be considered. A notice of denial stating that SIJ status is denied because the Attorney General's consent to the dependency order is a precondition to the grant of status and that the petition failed to establish the requirements for consent must be issued.

**Supporting Documentation for SIJ Petitions**

SIJ petitions should be filed with INS supported by a juvenile court dependency order. Additional documentation submitted with the petition should include:

- Evidence of the juvenile's date and place of birth;
- Evidence of the juvenile's date and manner of entry into the United States;
- Evidence of the juvenile's current immigration status;
- Evidence that the juvenile court deemed the juvenile eligible for long-term foster care due to abuse, neglect, or abandonment;
- Evidence that it would not be in the juvenile's best interest to be returned to the juvenile's or the parents' previous country of nationality or country of last habitual residence: and
- Evidence of the type of proceeding before the juvenile court that resulted in the dependency order.

Evidence that a dependency order was issued on account of abuse, neglect, or abandonment, and that it would not be in the juvenile's best interest to be removed from the United States is crucial to obtaining the Attorney General's consent to the dependency order. Documents filed with the juvenile court would be the most reliable evidence of these elements of consent. However, in many States documents submitted to or issued by the juvenile court in dependency proceedings may be subject to privacy restrictions. Therefore, if a dependency order does not include information establishing these crucial elements and State laws prevent court documents from being submitted to INS, a statement summarizing the evidence presented to the juvenile court during the dependency proceeding and the court's findings should be sufficient to establish the elements. In order for a statement to serve as acceptable evidence of these elements, the statement should be in the form of an affidavit or other signed, sworn statement, and be prepared by the court or the State agency or department in whose custody the juvenile has been placed. All other evidence the petitioner submits to establish the consent elements must also be considered in determining whether or not to consent to the dependency order.

FROM : DA1GDJ1GPGLA D. SA( : PINEDA"   PHONE NO. : 430996
11/02/2007  18:21                                   M1HMC

Nov. 02 2007 07:21PM P1
PAGE  01/91

### Declaración de Alejandrina Ardón, abuela de Oscar Adolso Flores España

Mi nombre es Alejandrina Ardón. Nací el 5 de Agosto, 1938 in Nuevo Cotapeque, Honduras. Tenía ocho hijos en total, pero dos fueron asesinados. Estoy escribiendo esta carta porque estoy muy preocupada sobre la vida de mi nieto, Oscar Adolso Flores España. Es muy importante que el no regresa a Honduras porque el no tiene ningún persona para cuidarlo y el ha sufrido mucho en su vida corta.

Oscar ha tenido una vida muy difícil y triste. El es un huérfano. Oscar nació en Villanueva, Cortes, Honduras. La mama de Oscar, Bertha España, lo dejó cuando él tenía tres meses. Oscar vivía con su papa hasta cuando tenía ocho años el su papa, Oscar Flores, fue asesinado.

Entiendo que el papa de Oscar había asesinado porque mi otro hijo, Melvin Daniel Flores estaba metido en Mara 18 y ellos querían vengarse porque Melvin quitó la Mara. Los mareros no podían encontrar a Melvin para matarlo porque vivió escondido.

Por eso, Oscar se puso huérfano. Yo quería cuidarlo pero yo era muy pobre y no podía. Con la violencia que enfrentar mi familia, no podía proteger a Oscar de sufrimiento. Oscar vivía con varias parientes después de su papa había muerto. No sé como era el tratamiento de Oscar en ese tiempo. Solo recuerdo que el me pidió a retirarlo de esos parientes para vivir conmigo pero no tenía suficiente dinero para cuidarlo.

En el ano 2002, otro tío de Oscar, Frank, fue matado de un asesino muy salvaje. Entiendo que él era un miembro de Mara18, la misma que mi hijo Melvin estaba metido antes. Más en mi familia fueron matados por las Maras también.

Oscar salió de Honduras en el ano 1999 porque el no podía aguantar la situación acá. Yo nunca podía protegerlo del peligro y sufriendo de la familia.

Cuando él me llamó de los Estados Unidos yo lo aconsejé que el no debería regresar a Honduras. Todavía yo lo creo. Si él regresa, yo no puedo cuidarlo y no hay nadie para cuidarlo. El no tendrá el apoyo que necesita y estoy segura que yo no puedo protegerlo de la violencia enfocando en mi familia. Yo ya perdí dos hijos y no quiero perder uno más.

Yo juro que esta declaración dice la verdad.

_Firma de Alejandrina Ardón_

_2 de Noviembre 2012_
Fecha

### Statement of Alejandrina Ardon, grandmother of Oscar Fuentes Espana

My name is Alejandrina Ardon. I was born on August 6, 1938 in Nuevo Cotapeque, Honduras. I have eight children in total, but two were murdered. I am writing this letter because I am very concerned about the life of my grandson, Oscar Fuentes Espana. It is very important that he does not return to Honduras because he does not have anybody to take care of him and he has suffered a lot in his short life.

Oscar has had a very difficult and sad life. He is an orphan. He was born in El Paraiso, Honduras. Oscar's mom, Bertha Espana, left him when he was three months old. Oscar lived with his father until he was eight years old and his dad, Oscar Flores was murdered.

I understand that Oscar's father was murdered because my other son, Melvin Daniel Flores was involved in Mara 18 and they wanted revenge because Melvin quit the gang. The gangsters were not able to find Melvin to kill him because he lives hidden.

Because of this, Oscar became an orphan. I wanted to take care of him but I was very poor and I could not. With the violence that my family faced, I could not protect Oscar from suffering. Oscar lived with various parents after his father was killed. I do not know how Oscar was treated in that time. I only remember that he asked me to take him from those relatives to live with me but I did not have sufficient money to take care of him.

In the year 2002, another uncle of Oscar, Frank, was killed by a very savage murderer. I understand that he was a gang member of Mara 18, the same gang that Melvin had been involved in before. More in my family were killed by the gangs also.

Oscar left Honduras in 1999 because he could not stand the situation here. I could never protect him from danger and suffering of the family.

When he called me from the United States I advised him that he should not return to Honduras. I still believe it. If he returns I cannot take care of him and there is not anybody to care for him. He would not have the support that he needs and I am sure that I could not protect him from the violence focused on my family. I already lost two sons and I do not want to lose another one.


I swear this statement says the truth.


 [signature]_____          November 2, 2007_____
Signature of Alejandrina Ardon          Date

## CERTIFICATE OF TRANSLATION

I, Rebecca Carson, hereby certify that the above is an accurate translation of the original "Personal Statement" in Spanish; and that I am competent in both English and Spanish to render such translation

Rebecca S. Carson

11/2/07

November 2, 2007

# Dunn, Katharine

| | |
|---|---|
| **From:** | Sarah Diaz [SDiaz@heartlandalliance.org] |
| **Sent:** | Wednesday, November 07, 2007 1:18 PM |
| **To:** | 'deane.dougherty@dhs.gov' |
| **Cc:** | Mary Meg Mccarthy; Bing Luo; Graham, Elizabeth; Dunn, Katharine; Naasko, Heidi; Mony Ruiz-Velasco |
| **Subject:** | EMERGENCY REQUEST FOR SPECIFIC CONSENT |

**Attachments:** CONSENT PACKET.pdf; Cook Memo.pdf

Deane Dougherty
Juvenile & Family Residential Management Unit
Immigration and Customs Enforcement
Department of Homeland Security
Washington, D.C.

VIA EMAIL

November 7, 2007

RE: EXPEDITED REQUEST FOR SPECIFIC CONSENT TO JUVENILE COURT JURISDICTION
OSCAR ADELSO FLORES ESPANA (A94-770-920)

**CHILD TURNS 18 ON NOVEMBER 14, 2007**

Dear Ms. Dougherty

Thank you for taking my call regarding our case before your office. As per our conversation, we are writing to request that this case be decided on an emergency basis with the Juvenile and Family Residential Management Unit ("JFRMU") of DHS/ICE. We request the JFRMU make a decision **today** regarding the pending Request for Specific Consent to pursue a Special Immigrant Juvenile (SIJ) visa. As we explained, our client, Oscar Adelso Flores Espana is aging out on November 14, 2007. Because of the process in Juvenile Court in Illinois, we must file our petition tomorrow, Thursday November 8, 2007 in order for the Court to have sufficient time to adjudicate the case. (The courts are closed on November 12, 2007.) Thus, we are requesting a response from DHS/ICE today.

On November 2, 2007, our office sent via Federal Express, an emergency request for consent to M. Yvonne Evans, Director of JFRMU at DHS/ICE. (See Request for Consent, attachment 1.) We have made repeated attempts to contact Ms. Evans, as well as other officials working in this office, in an effort to obtain a decision on this request. At present, no one from the JFRMU has responded to our inquiries. The specific details of our request are set forth in the attached documents.

Based on the facts outlined in the attachments, Oscar is eligible for Special Immigrant Juvenile status. However, he must have consent from ICE to pursue this relief under federal immigration law. (See DHS Internal Memorandum, attachment 2.) Thus, an immediate response from DHS/ICE is critical to Oscar's ability to pursue an adjudication from the state juvenile court. In order to prevent irreparable harm to our client's case, we request that DHS/ICE respond immediately to our request for consent.

We appreciate your efforts to serve us with a determination **today** so that we can file the appropriate petition in juvenile court. I or my colleagues can be reached today at the above email addresses or you can reach me at (312)660-1335 or Bing Luo at (312)660-1358 or Mary M. McCarthy at (312)660-1351.

Sincerely,

Sarah J. Diaz, Esq.
Immigrant Children's Protection Project

**EXHIBIT B**

National Immigrant Justice Center
*A Heartland Alliance Partner*
208 S. LaSalle St., Suite 1818
Chicago, IL 60604
tel:  312.660.1335
fax: 312.660.1506
www.immigrantjustice.org

---

This electronic mail message may contain confidential and proprietary information.
If the reader of this message is not the intended recipient, any disclosure,
copying or distribution of this communication is strictly prohibited. If you have
received this communication in error, please immediately delete this message and
any attachments.

## Dunn, Katharine

| | |
|---|---|
| **From:** | Dougherty, Deane [deane.dougherty@dhs.gov] |
| **Sent:** | Wednesday, November 07, 2007 2:52 PM |
| **To:** | Sarah Diaz |
| **Cc:** | Mary Meg Mccarthy; Bing Luo; Graham, Elizabeth; Dunn, Katharine; Naasko, Heidi; Mony Ruiz-Velasco; Evans, Mary Y |

**Subject:** RE: EMERGENCY REQUEST FOR SPECIFIC CONSENT

Ms. Diaz,

Attached please find the response to your request for an expedited review for specific consent for Oscar Adelso Flores Espana (A94-770-920). The response was prepared and faxed to your attention on November 6, 2007.

Please feel free to contact me should you have any questions or concerns.

Sincerely,

Deane Dougherty
Management and Program Analyst
Juvenile and Family Residential Management Unit
Immigration and Customs Enforcement
202-732-2864 (ofc)
202-345-9406 (cell)

Warning: This document is UNCLASSIFIED//FOR OFFICIAL USE ONLY (U//FOUO). It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. 552). It is to be controlled, stored, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to FOUO information and is not to be released to the public or other personnel who do not have a valid "need-to-know" without prior approval of an authorized DHS official. No portion of this report should be furnished to the media, either in written or verbal form.


-----Original Message-----
**From:** Sarah Diaz [mailto:SDiaz@heartlandalliance.org]
**Sent:** Wednesday, November 07, 2007 2:18 PM
**To:** 'deane.dougherty@dhs.gov'
**Cc:** Mary Meg Mccarthy; Bing Luo; 'Graham, Elizabeth'; 'Dunn, Katharine'; 'Naasko, Heidi'; Mony Ruiz-Velasco
**Subject:** EMERGENCY REQUEST FOR SPECIFIC CONSENT

Deane Dougherty
Juvenile & Family Residential Management Unit
Immigration and Customs Enforcement
Department of Homeland Security
Washington, D.C.

VIA EMAIL

November 7, 2007

RE: EXPEDITED REQUEST FOR SPECIFIC CONSENT TO JUVENILE COURT JURISDICTION
OSCAR ADELSO FLORES ESPANA (A94-770-920)

**CHILD TURNS 18 ON NOVEMBER 14, 2007**

Dear Ms. Dougherty

Thank you for taking my call regarding our case before your office. As per our conversation, we are writing to request that this case be decided on an emergency basis with the Juvenile and Family Residential Management Unit ("JFRMU") of DHS/ICE. We request the JFRMU make a decision **today** regarding the pending Request for Specific Consent to pursue a Special Immigrant Juvenile (SIJ) visa. As we explained, our client, Oscar Adelso Flores Espana is aging out on November 14, 2007. Because of the process in Juvenile Court in Illinois, we must file our petition tomorrow, Thursday November 8, 2007 in order for the Court to have sufficient time to adjudicate the case. (The courts are closed on November 12, 2007.) Thus, we are requesting a response from DHS/ICE today.

On November 2, 2007, our office sent via Federal Express, an emergency request for consent to M. Yvonne Evans, Director of JFRMU at DHS/ICE. (*See* Request for Consent, attachment 1.) We have made repeated attempts to contact Ms. Evans, as well as other officials working in this office, in an effort to obtain a decision on this request. At present, no one from the JFRMU has responded to our inquiries. The specific details of our request are set forth in the attached documents.

Based on the facts outlined in the attachments, Oscar is eligible for Special Immigrant Juvenile status. However, he must have consent from ICE to pursue this relief under federal immigration law. (*See* DHS Internal Memorandum, attachment 2.) Thus, an immediate response from DHS/ICE is critical to Oscar's ability to pursue an adjudication from the state juvenile court. In order to prevent irreparable harm to our client's case, we request that DHS/ICE respond immediately to our request for consent.

We appreciate your efforts to serve us with a determination **today** so that we can file the appropriate petition in juvenile court. I or my colleagues can be reached today at the above email addresses or you can reach me at (312)660-1335 or Bing Luo at (312)660-1358 or Mary M. McCarthy at (312)660-1351.

Sincerely,

Sarah J. Diaz, Esq.
Immigrant Children's Protection Project
National Immigrant Justice Center
*A Heartland Alliance Partner*
208 S. LaSalle St., Suite 1818
Chicago, IL 60604
tel: 312.660.1335
fax: 312.660.1506
www.immigrantjustice.org

---

This electronic mail message may contain confidential and proprietary information. If the reader of this message is not the intended recipient, any disclosure, copying or distribution of this communication is strictly prohibited. If you have received this communication in error, please immediately delete this message and any attachments.

## Dunn, Katharine

**From:**     Sarah Diaz [SDiaz@heartlandalliance.org]
**Sent:**     Wednesday, November 07, 2007 3:06 PM
**To:**       'Dougherty, Deane'
**Cc:**       Mary Meg Mccarthy; Bing Luo; Graham, Elizabeth; Dunn, Katharine; Naasko, Heidi; Mony Ruiz-Velasco; Evans, Mary Y

**Subject:** RE: EMERGENCY REQUEST FOR SPECIFIC CONSENT

Ms. Dougherty,

I appreciate your prompt response to our inquiries. However, there was no attachment to your email. We will look for a faxed version. However, if you could resend via email, that would be best.

Again, I appreciate your promptness and attention to this very important matter.

Sincerely,

Sarah Diaz

---

**From:** Dougherty, Deane [mailto:deane.dougherty@dhs.gov]
**Sent:** Wednesday, November 07, 2007 2:52 PM
**To:** Sarah Diaz
**Cc:** Mary Meg Mccarthy; Bing Luo; Graham, Elizabeth; Dunn, Katharine; Naasko, Heidi; Mony Ruiz-Velasco; Evans, Mary Y
**Subject:** RE: EMERGENCY REQUEST FOR SPECIFIC CONSENT

Ms. Diaz,

Attached please find the response to your request for an expedited review for specific consent for Oscar Adelso Flores Espana (A94-770-920). The response was prepared and faxed to your attention on November 6, 2007.

Please feel free to contact me should you have any questions or concerns.

Sincerely,

Deane Dougherty
Management and Program Analyst
Juvenile and Family Residential Management Unit
Immigration and Customs Enforcement
202-732-2864 (ofc)
202-345-9406 (cell)

Warning: This document is UNCLASSIFIED//FOR OFFICIAL USE ONLY (U//FOUO). It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. 552). It is to be controlled, stored, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to FOUO information and is not to be released to the public or other personnel who do not have a valid "need-to-know" without prior approval of an authorized DHS official. No portion of this report should be furnished to the media, either in written or verbal form.

-----Original Message-----
**From:** Sarah Diaz [mailto:SDiaz@heartlandalliance.org]



*Office of Detention and Removal Operations*
**U.S. Department of Homeland Security**
801 I Street, NW
Washington, DC 20536

## U.S. Immigration and Customs Enforcement

November 6, 2007

Sarah J. Diaz, Esq.
National Immigrant Justice Center
208 S. LaSalle Street
Suite 1818
Chicago, IL 60604

Re: Oscar Adelso Flores Espana (A94-770-020)

Dear Ms. Diaz:

This responds to your letter dated November 2, 2007, requesting that the Secretary (the Secretary) of the Department of Homeland Security (DHS) relinquish federal custody jurisdiction over your client, Oscar Adelso Flores Espana (Oscar), who is in federal immigration proceedings, and consent to the state juvenile court's exercise of custody jurisdiction. Such relinquishment would allow your client to pursue a Special Immigrant Juvenile (SIJ) classification under Section 101(a)(27)(J) of the Immigration and Nationality Act (INA). Additionally, you are requesting a response on or before November 7, 2007, based upon your stated claim that Oscar will be turning eighteen on November 14, 2007, thus "aging-out".

Unfortunately, your letter was not received in this office until November 5, 2007, thus allowing only two days in which to provide the requested response. We will process your request as quickly as possible, and have initiated a request for all available information regarding your client.

Oscar Adelso Flores Espana
A94 770 920

If I can be of further assistance, please do not hesitate to contact me via jfrmu@dhs.gov.

Sincerely,

M. Yvonne Evans    (A) chief JFRMU
Chief
Juvenile and Family Residential Management Unit
Immigration and Customs Enforcement
Office of Detention and Removal Operations

*Certain information contained in this document may be subject to privilege. The Agency has waived said privilege for the limited purpose of this document, but does not waive any applicable privileges to information not contained herein.*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

OSCAR FLORES ESPAÑA , *a minor*,

       Plaintiff,

v.

M. YVONNE EVANS, NATIONAL JUVENILE
COORDINATOR FOR U.S. IMMIGRATION, and THE
DEPARTMENT OF HOMELAND SECURITY,

       Defendants.

Case No.

(Judge to be Assigned)

## EMERGENCY MOTION FOR HEARING ON COMPLAINT FOR MANDAMUS RELIEF

Plaintiff, Oscar Flores España ("Flores"), by and through his attorneys, moves this Honorable Court for an emergency hearing seeking mandamus relief against Defendants M. Yvonne Evans, Chief of Juvenile and Family Residential Management Unit, Immigration and Customs Enforcement, Office of Detention and Removal Operations ("Evans"), and The Department of Homeland Security ("DHS"), and in support thereof, states as follows:

### INTRODUCTION

This action arises under Section 101(a)(27)(J) of the Immigration and Nationality Act (the "INA") (8 U.S.C. § 1101(a)(27)(J)), which provides for special immigrant status to certain alien minors.[1] The "statute sets forth a four-step process by which a minor alien may achieve [special immigrant juvenile ("SIJ")] status," the first of which is to obtain special consent from

---

[1]  Congress created the "Special Immigrant Juvenile" status "in 1990 to protect abused, neglected, or abandoned children who . . . illegally entered the United States." *Yeboah v. U.S. Dept. of Justice*, 345 F.3d 216, 221 (3d Cir. 2003). "Congress provided an alternative to deportation for these children. Rather than being deported along with abusive or neglectful parents, or deported to parents who had abandoned them once in the United States, such children may seek special status to remain in the United States." *Id.*

the Department of Homeland Security ("DHS") to petition a state court for an order of dependency. *A.A.-M v. Gonzales*, 2005 WL 3307531, at *1 (W.D. Wash. Dec. 6, 2005); *see also Zheng v. Pogash*, 416 F. Supp. 2d 550, 554 (S.D. Tex. 2006). Despite meeting all criteria for entitlement to specific consent, Oscar Flores España ("Flores") is in imminent danger of never making it past the first step.

Time is a luxury Flores does not have. A state court must enter the dependency order before Flores' 18th birthday—November 14, 2007—or his ability to apply for SIJ status will be permanently foreclosed. Flores must seek court intervention given DHS' failure to act within the time requested or else suffer the permanent irreparable harm that will result if he is foreclosed from seeking to apply for SIJ status. We, therefore, respectfully request that this Court enter an order directing Defendants Evans and DHS to issue the specific consent required to permit Flore to petition an Illinois juvenile court for a dependency order. It is vital that this Court note that the relief sought will only enable Flores to begin the long process of seeking SIJ status. The requested relief will in no way provide or adjudicate Flores' final immigration status.

It is worth noting that Flores' predicament is precisely the type that a state court should evaluate to determine whether an order of dependency is justified. *See Yeboah*, 345 F.3d at 221 (stating that SIJ status was created "in 1990 to protect abused, neglected, or abandoned children who . . . illegally entered the United States").

## ARGUMENT

The road to SIJ status is long. Indeed, a juvenile under the age of 21 must follow a four-step process set forth by the INA in order to obtain SIJ status. *See* 8 U.S.C. § 1101(a)(27)(J). First, if a minor is in DHS custody, as is Flores, he must request and obtain "specific consent" from a single individual employed by DHS to proceed before a State juvenile court. *Id.* at § 1101(a)(27)(J)(iii)(I). Assuming that the minor receives "specific consent," the relevant state

court must hold proceedings to determine and declare (1) the minor dependent on the court and commit him to long-term foster care due to abuse, abandonment or neglect, *id.* at §§ 1101(a)(27)(J)(i)-(ii), and (2) that it is not in the minor's "best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence," *id.* at § 1101(a)(27)(J)(ii). The state court then issues a dependency order if it answers both of these inquiries in the affirmative. The issuance of the dependency order is not the end of the process. Instead, the minor must then request DHS' express consent to the dependency order. *Id.* at § 1101(a)(27)(J)(iii). To determine whether to grant its express consent, DHS re-reviews the request for SIJ status and the process used to obtain the dependency order to ensure that "the request for SIJ classification is bona fide." William Yates, Memorandum #3 – Field Guidance on Special Immigrant Juvenile Status Petitions, at 2 (May 27, 2004) (noting that "express consent is an acknowledgment that the request for SIJ classification is *bona fide*.").

DHS' failure to act within the requested time is the functional equivalent of denying him the special consent to which he is otherwise entitled. This agency inaction is itself arbitrary and capricious given the very real legal consequences it creates for Flores.

Federal courts have jurisdiction where, as is the case here, DHS withholds its specific consent to state court jurisdiction. *Yeboah*, 345 F.3d at 220, (holding that the district court had jurisdiction to review the Attorney General's denial of an alien's request for consent to a state juvenile dependency hearing); *M.B. v. Quarantillo*, 301 F.3d 109, 113 (3d Cir. 2002) (finding that there was sufficient guidance for the court to determine whether the INS acted arbitrarily and capriciously, and holding that the court had jurisdiction "to review the validity of the INS's refusal to yield jurisdiction to the juvenile court"); *Zheng*, 416 F. Supp. 2d at 556-557 (same); *F.L. v. Thompson*, 293 F. Supp. 2d 86, 92-93 (D.D.C. 2003) (holding that an alien minor could

bring an action under the APA, seeking declaration and temporary restraining order requiring government to issue a decision on his request for consent to request state juvenile court to exercise jurisdiction over him).   The Court's jurisdiction derives from the Administrative Procedure Act ("APA"), which authorizes federal district courts to review "final agency actions," which are definitive and have a direct and immediate impact on the party challenging the action. 5 U.S.C. §§ 704-706.

A writ of mandamus commands the officer or body to whom it is directed to perform a specific duty to which the petitioner is entitled by right.  *People ex rel. Rappaport v. Drazek*, 30 Ill.App.3d 310, 332 N.E.2d 532 (1st Dist., 1975).  To state a claim for mandamus, the plaintiff must show that (1) he has a clear right to the relief sought, (2) the defendant has a clear duty to perform, (3) and no other adequate remedy is available.  *Patrick v. City of Chicago*, 2007 WL 951901 (N.D. Ill, Mar. 28, 2007).  The Emergency Complaint for Mandamus Relief and the exhibits attached thereto plainly satisfy these elements and should lead this Court to grant the emergency relief requested.

WHEREFORE, Plaintiff, Oscar Flores España respectfully requests that this Court grant him an emergency hearing on his Complaint for Mandamus Relief against defendants M. Yvonne Evans, Chief of Juvenile and Family Residential Management Unit, Immigration and Customs Enforcement, Office of Detention and Removal Operations, and The Department of Homeland Security, and enter an order directing them to issue the specific consent required for state court jurisdiction on November 8, 2007 and for such other and further relief that the Court deems equitable and just.

Dated: November 8, 2007      Respectfully submitted,

By: _____
      Rosa M. Tumialán, ARDC # 6226267
      rtumialan@dykema.com
      Katharine N. Dunn, ARDC# 6282789,
      kdunn@dykema.com
      Dykema Gossett PLLC
      10 S. Wacker Drive, Suite 2300
      Chicago, IL 60606
      (312) 876-1700
      *Attorneys for Plaintiff Oscar Flores España*